### 10787

#### FRADY *ET AL* v. IVESTER

#### (110 S. E. 135)

1. APPEAL AND ERROR—REFUSAL TO PERMIT AMENDMENT NOT PREJUDICIAL.—In an action to recover the possession of land from a mortgagee, to whom the mortgagors had conveyed and for an accounting for the rents and profits, and the refusal to permit an amendment of the complaint by adding allegations that defendant had taken possession unlawfully, and held the lands for a number of years, and was due to account for the rents and profits and deliver possession, *held* not prejudicial.

2. APPEAL AND ERROR—FINDINGS AS TO POSSESSION AND CLAIM OF OWNERSHIP RELATE TO LEGAL ISSUE AND ARE NOT REVIEWABLE.—In an action to recover the possession of land from a mortgagee, and for an accounting for the rents and profits, the issue as to title was legal in its nature, and findings that defendant took exclusive possession of the land, claiming it as her own, etc., were not reviewable by the Supreme Court.

3. MORTGAGES—STIPULATION THAT MORTGAGEE'S TITLE SHOULD BECOME ABSOLUTE AFTER CERTAIN DATE HELD VOID; MORTGAGEE ENTERING UNDER DEED UPON MORTGAGOR'S FAILURE TO PAY NOT ENTITLED TO HOLD ADVERSELY.—Under Civ. Code 1912, § 3460, providing that no mortgagee shall be entitled to maintain a possessory action, that the mortgagor shall be deemed the owner of the land, but that releases of the equity of redemption shall be binding, etc., where mortgagors executed a deed to the mortgagee

providing that it should be a mortgage until a specified date, and should then become absolute if the mortgagors had failed to pay, and the mortgagee, after such date, without other consideration than the mortgagor's inabiliy to pay, took possession, the relation of mortgagor and mortgagee continued and the law imposed the duties of a trustee upon the mortgagee, and she could not hold adversely to the rights of the mortgagors until she either surrendered possession .or gave notice of an adverse possession.

4. ADVERSE POSSESSION—POSSESSION, TO AUTHORIZE PRESUMPTION OF CONVEYANCE, MUST BE ADVERSE.—The possession which authorizes the presumption of a conveyance must be adverse, and not permissive.

5. LIMITATION OF ACTIONS—DO NOT RUN AGAINST INFANT MORTGAGOR WHO WAS INFANT WHEN MORTGAGEE TOOK POSSESSION.—Where an infant mortgagor was still an infant when the mortgagee took possession under a conveyance from the mortgagors, neither limitations, adverse possession, nor the presumption of a grant commenced to run againt her, and her disability also protected the adult mortgagors against limitations and adverse possession, though not against the presumption of a grant.

Before PRINCE, J., Oconee, July, 1920.    Reversed and new trial ordered.

Action by A. J. Frady et al against Mrs. W. O. Ivester. Judgment for defendant and plaintiffs appeal.

The record contains the following statement:

"This 'action was commenced on or about the 7th day of March, 1919, by the plaintiffs, A. J. Frady, Mrs. Mary V. Hughes, Mrs. Delilah E. Marlin, Mrs. Martha M. Miller, and Choice Frady, against Mrs. W. C. Ivester, defendant, for the purpose of recovery of the tract of land herein described, and an accounting for the rents and profits and waste against the defendant.  The cause was referred to John F. Craig as special referee, by consent of counsel in open Court, to hear and decide all issues of law and fact, and report his findings to the Court, who found in favor of the defendant.  Upon exceptions the cause was heard before the Circuit Judge, who confirmed the report of the Special Referee, and dismissed the complaint; but neither the

Referee nor the Circuit Judge passed upon the question as to what would be reasonable rents and profits and waste."

The complaint is as follows:

"(1)   That Mrs. Elizabeth E. Tate departed this life on the ——— day of September, 1905, seized in fee and possessed of all that certain piece, parcel, or tract of land situate, lying, and being in Wagener Township, Oconee County, S. C., on branches of Cane Creek, waters of Little River, adjoining lands of Dennis Harkins, Elsie Deaton, Mrs. Mary V. Hughes, Mrs. Delilah E. Marlin, J. W. Cox, C. Q. Deaton, and Mrs J. M. Griffin, containing 100 acres, more or less

"(2)   That the said Mrs Elizabeth E. Tate left no will, and as her only heirs at law at the time of her death her daughter, Amanda Frady and her daughter Georgia Evers.

"(3)   That Georgia Evers and her husband, Earnest Evers, and their daughter, Hattie Evers, accepted a deed of conveyance to 50 acres of land from the said Elizabeth E. Tate, in full of all claims in and to the estate of Elizabeth E. Tate that she might have at the time of her death.

"(4)   That Amanda Frady departed this life on the ——— day of October, 1906, leaving as her only heirs at law her husband, the plaintiff, A. J. Frady, and her three daughters, Mrs. Mary V. Hughes, Delilah E. Marlin, and Mrs. Martha M. Miller, and a son, Choice Frady, the plaintiff.

"(5)   That the plaintiffs herein, Mary V. Hughes and Delilah E. Marlin, own as tenants in common 50 acres of land east of the 100-acre tract mentioned.

"(6)   That Mrs. W. C. Ivester claims some interest in the said tract of land by reason of a mortgage to secure a debt, which plaintiffs allege has been fully paid and satisfied.

"(7)   That the defendant, Mrs. W. C. Ivester, has held possession of some part of said land, and received rents and profits therefrom to the amount of $2,000.00, * * * and

has cut and sold timber, by her agents and servants, from the premises to the value of $500.00.

"Wherefore plaintiffs demand judgment: First, that the said tract of land be sold and the proceeds thereof divided amongst the plaintiffs herein according to their several rights; second, for judgment against the defendant, Mrs. W. C. Ivester, in the sum of $2,500.00, rents and profits and timber sold from said lands; third, for costs of this action; fourth, for such other and further relief as to the Court shall seem meet and proper."

The defendant denied the allegations of the complaint, and set up the pleas of title by adverse possession, presumption of a grant, the statute of limitations and laches.

The following are the findings of fact by the Referee:

"(1) The plaintiffs and the defendant claim from a common source of title, to wit, Elizabeth E. Tate.

"(2) On the 1st day of October, 1896, the said Elizabeth E. Tate made and delivered to T. E. Alexander her note of that date for $64.00, due January 1, 1897, payable to the order of T. E. Alexander, with interest at 8 per cent. per annum from maturity until paid, with provision for payment of 10 per cent. attorney's fees, and, to secure the payment of the said note, on the same day executed and delivered her mortgage deed on the 100-acre tract of land described in paragraph 1 of the complaint. This note and mortgage were assigned by T. E. Alexander to the defendant, then W. C. Von Lehe. On the 24th day of July, 1896, the plaintiff, Mary V. Hughes, made and delivered to the defendant, then Wilhelmina C. Von Lehe, her note for $67.68, due the 24th day of July, 1898, which provided for the payment of 10 per cent. attorney's fees, and on the 24th day of July, 1896, to secure the payment of the note, made and delivered her mortgage deed upon the tract of land described in Paragraph 5 of plaintiff's complaint.

"(3)    That on the 26th day of February, 1897, the debts secured by the two mortgages of real estate above referred to were unpaid, and the said Elizabeth E. Tate, Mary V. Hughes, and E. D. Frady executed and delivered to the defendant, then Wilhelmina Von Lehe, a deed covering both the 100-acre tract described in Paragraph 1 of the complaint, and the 50-acre tract described in Paragraph 5 of the complaint, as follows:

" 'The State of South Carolina.—Know all men by these presents that we, Elizabeth E. Tate, Mary V. Hughes, and E. D. Frady, in the State aforesaid, for and in consideration of the sum of $125.00, to us in hand paid, at and before the sealing of these presents, by Miss W. C. Von Lehe (the receipt whereof is hereby acknowledged), have granted, bargained, sold, and released, and by these presents, do grant, bargain, sell, and release unto the said Miss W. C. Von Lehe, her heirs and assigns, all that certain parcel or tract of land, being situate in Oconee County, in the State aforesaid, on branches of Oconee Creek, waters of Little River, adjoining lands of Mrs. George Evers, M. G. Brewer, Elijah Deaton, Tollison, and others, containing 150 acres, more or less, conveyed to Elizabeth E. Tate on the 1st day of September, 1894, by J. W. Holleman, master.    It is understood by and between the parties hereto that this deed of conveyance shall be considered and regarded as a mortgage on said real estate until the 1st day of November, 1897, but if the said Elizabeth E. Tate, Mary V. Hughes, and E. D. Frady shall fail to pay the said Miss W. C. Von Lehe two mortgages which she now holds against said real estate, then this deed of conveyance shall become absolute in fee forever to the said Miss W. C. Von Lehe.    Also $7.75 taxes paid by Miss W. C. Von Lehe on said lands.    Together with all and singular the rights, members, hereditaments, and appurtenances to the said premises belonging, or in any wise incident or appertaining.    To have and to hold all and singular the said

premises before mentioned unto the said Miss W. C. Von
Lehe, her heirs and assigns forever.   And we do hereby
bind ourselves, our heirs, executors, and administrators to
warrant and forever defend all and singular the said prem-
ises unto the said Miss W. C. Von Lehe, her heirs and as-
signs, against us and our heirs, and every person whomso-
ever lawfully claiming or to claim the same, or any part
thereof.

   · " 'Witness our hands and seals this 26th day of February,
A. D. 1897, in the year of our Lord one thousand eight
hundred and ninety-seven, and in the one hundred and twen-
tieth year of the sovereignty and independence of the United
States of America.   Signed, sealed, and delivered in the
presence of John E. Hoops, H. A. H. Gibson, Gus Hawkins,
J. A. Ivester.

   " 'E. E. Tate        [Seal.]
   " 'M. V. Hughes      [Seal.]
   " 'E. D. Frady       [Seal.]'

   *"E. E. Tate, Mary V. Hughes, and E. D. Frady remained
in possession of the tract of land described in this deed
until some time in November, 1897, at which time, being
unable to make payments of the mortgage debts, the land
was surrendered to defendant in payment of the mortgage
debts, and the defendant took exclusive possession of the
land, claiming it as her own, and has paid taxes and used
it as her own from that time to this.   So far as the evidence
shows, neither E. E. Tate, Mary V. Hughes, or E. D. Frady
nor anyone claiming under them, has made any claim to the
land since the land was surrendered to the defendant and
taken possession of by her.   No accounting has ever been
made by the defendant, nor any demand made upon her for
such accounting."*

   The Referee's conclusions of law are as follows:

   "(1)   I find the instrument executed by E. E. Tate, Mary
V. Hughes, and E. D. Frady, dated February 26, 1897,
(Exhibit 2), to the defendant was a mortgage, though the

intention of the parties was that it should take effect as a deed upon the failure of the mortgagors to pay the mortgage debt as provided in the condition set out in the instrument.

"(2) That where a mortgagee enters into possession of the mortgaged premises with the intention of holding the mortgaged premises as security for the mortgage debt, or for the collection of the rents and profits for application to payment of the mortgage debt, the mortgagee becomes a trustee for the mortgagors.

"(3) That the possession of the defendant here was not as a trustee, but under a claim of exclusive ownership, and that the taking of possession by the defendant of the mortgaged premises under the circumstances in this case was a repudiation of any trust relationship which started the running of the statute of limitations against the mortgagors of the instrument and those claiming under or through the mortgagors.

"(4) That, under the provisions of the Code, §§ 123, 124, and 143, the plaintiffs are now barred from a recovery of the possession of the premises from the defendant.

"(5) I think the plaintiffs are further barred by the more than 20 years' adverse possession of the defendant: (a) For the reason that the right to foreclose and the right to redeem are reciprocal rights, and when one is barred the other is barred; (b) by presumption of a grant or deed; (c) by their laches."

The first exception was to the refusal to permit plaintiffs to amend the sixth paragraph of the complaint to allege that defendant had taken possession of all or certain parts of the said tract of land under said written instrument unlawfully and held them for a number of years, and was due to account for rents and profits thereof and deliver possession and to amend the prayer accordingly.

*Mr. J. R. Earle,* for appellant, cites: *Title of mortgaged premises cannot be transferred except by judicial pro-*

*ceeding*: 1 Civ. Code 1912, Sec. 3465. *Mortgagor remains owner until sale*: Id. Sec. 3460. *The right to foreclose and the right to redeem are reciprocal, and if one is barred the other is barred*: 93 S. C., 513. *Court will carefully scrutinize all conveyances from mortgagor to mortgagee*: 21 S. C., 400. *Party gaining possession under a lease, nor a trustee or mortgagee can acquire title by possession*: 112 S. C., 10.

*Mr. E. L. Herndon*, for respondent, cites: *Appellants are concluded by all findings of fact and conclusions of law not excepted to*: 58 S. C., 495. *Findings of Referee concurred in by Circuit Judge will not be disturbed if there is any evidence to sustain them*: 100 S. E., 148; 103 S. C., 307. *Rulings not appearing in the record cannot be considered on appeal*: 105 S. C., 62. *Action is for recovery of land*: 98 S. C., 175. *Release of equity of redemption is equivalent to conveyance*: 108 S. C., 397. *If the Trustee does an act which he intends and which the cestui que trust understands to be a discharge of his trust, the statute will commence to run*: 3 Rich., 445; Bail. Eq., 195; 4 Rich. Eq., 63; 4 Strob. Eq., 196; 7 Rich. Eq., 34; 1 Strob. Eq., 79; 2 Strob. Eq., 340; 3 Strob. Eq., 39; 2 Hill Eq., 228; 2 Rich Eq., 446; 26 S. C, 237; 32 S. C., 253; 82 S. C., 497. *Action is barred*: Code Proc., Secs. 123, 124, 143; 27 Cyc., 1821. *Right to foreclose and to redeem are reciprocal*: 92 S. C., 513; 11 Enc. L., 248; 27 Cyc., 1816. *Presumption of grant*: 80 S. C., 112; 71 S. C., 521. *Barred by laches*: 64 S. C., 502; 2 Rich. Eq., 446; 4 Rich Eq., 64; 28 Enc. L., 1135. *Statute once it commenced to run was not interrupted*: 20 S. C., 52; 53 S. C., 126; 59 S. C., 451; 94 S. C., 79. *Infancy of grantor would not make deed void*: 27 S. C., 302. *His interest would now be barred*: 9 Enc., 117. *Release of equity of redemption is conveyance to holder of encumbrances*: 11 Rich. L., 704; 10 S. C., 373; 26 S. C., 410. *Sufficient as*

*color of title*:   71 S. C., 331; 87 S. C., 393; 86 S. C., 498. December 19, 1921.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The record shows that the issue of title was raised by the pleadings, as to which either the plaintiffs or the defendant had the right to demand a trial by a jury; but that it was waived.

The appellant's first exception assigns error on the part of his Honor, the Circuit Judge, in refusing to allow the plaintiffs' attorney to amend the complaint. He has failed to satisfy this Court that there was prejudicial error. The exception is therefore overruled.

The argument of the appellants' attorney contains this statement:

"The other exceptions raise two practical questions: (1) Are the plaintiffs whose ancestor, Mrs. E. E. Tate, executed the mortgage in question, barred by the lapse of 20 years? (2)   Is the plaintiff, D. E. Frady (now Marlin), having signed the mortgage during her minority, barred by the lapse of more than 10 years?"

The question will be considered next whether the plaintiffs are barred by the lapse of 20 years.

The issue of title is legal in its nature. Therefore the findings of fact by the Circuit Court which we have italicized are not reviewable by this Court.

The Circuit Court's conclusions of law from those facts have already been set out. It will be observed that the Circuit Court ruled, in effect, that the defendant did not become a trustee when she entered into possession of the lands by reason of the fact that she did not enter with the intention of holding the mortgaged premises as security for the mortgage debt, or for the collection of the rents and profits for the application to the payment of the mortgage debt. That the Circuit Court also ruled, in effect, that the defendant was not a trustee, by reason of the

fact that her entry into possession without such intention was a claim of exclusive ownership, and a repudiation of any trust relationship, which started the running of the statute of limitations against the mortgagors and the plaintiffs. Section 3460, Code of Laws 1912, is as follows:

"No mortgagee shall be entitled to maintain any possessory action for the real estate mortgaged, even after the time allotted for the payment of the money secured by mortgage is elapsed; but the mortgagor shall be deemed owner of the land, and the mortgagee as owner of the money lent or due, and shall be entitled to recover satisfaction for the same out of the land by foreclosure and sale according to law: *Provided,* That notwithstanding the foregoing provision all releases of the equity of redemption shall be binding and effectual in law."

As the mortgagees had not released their equity of redemption at the time the defendant entered into possession of the lands, the legal title remained in them. *Navassa Guano Co. v. Richardson,* 26 S. C., 401; 2 S. E., 307.

The rights of the mortgagor and the mortgagee are thus stated in *Walling v. Aiken,* McMul. Eq., 1:

"It is the well known rule of the Court that that which was originally intended as a security shall never be turned into an absolute conveyance. Even if it be expressly stipulated that, if the money be not paid at a given day, the title shall be absolute, and the estate irredeemable, this stipulation operates nothing. And it is equally incompetent to stipulate from what source the funds to redeem may be derived. The mortgagee is considered in this Court, only as a creditor, and all that he is entitled to is his money, coming at what time (within the known limits) or from what source it may."

To the same effect, is the following language of the Court, in *Brownlee v. Martin,* 21 S. C., 392:

"The law looks with jealousy and suspicion upon all dealings between the mortgagee and the mortgagor, from the

supposed influence which the former has over the latter. If therefore a deed absolute on its face is shown (as it may be shown by parol evidence) to have been executed merely· as a security for a debt, * * * it will operate only as a mortgage, and it cannot be converted by any subsequent agreement into an absolute conveyance, unless such subsequent agreement is based upon a sufficient consideration, and is shown to have been fairly made, without undue influence by the creditor; and the burden of showing this is upon the mortgagee. In other words, it must amount to a sale of the equity of redemption, fairly made, upon sufficient consideration. These views are fully supported by authority,"—citing numerous decisions.

The only consideration stated in the findings of fact by the Circuit Court is that, the mortgagors "being unable to make payments, the land was surrendered to the defendant in payment of the mortgage debts." It will thus be seen that there was no new consideration, and that, after the defendant entered into possesion, the relation of mortgagor and mortgagee continued to exist between her and the mortgagor. Under these facts the law imposed upon the mortgagee the duties of a trustee. *Sims v. Steadman,* 62 S. C., 300; 40 S. E., 677.

The defendant's entry into possession was permissive, and, as she had a duty to perform, she could not hold adversely to the rights of the mortgagors until she either surrendered the possession or gave notice of an adverse possession. *Wilson v. Weathersby,* 1 N. & McC., 374; *McCutchen v. McCutchen,* 77 S. C., 129; 57 S. E., 678; 12 L. R. A. (N. S.) 1140; *Pinckney v. Knowles,* 112 S. .C., 7; 99 S E, 354; *Milhouse v Patrick,* 6 Rich., 350.

The possession which authorizes the presumption of a conveyance must be adverse, and not permissive. *Trustees of Wadsworthville v. Meetze,* 4 Rich., 51.

It will thus be seen that the Circuit Judge's conclusions from the facts found by him were erroneous.

We proceed to the consideration of the question whether the plaintiff, D. E. Frady, having signed the mortgage during her minority, is barred by the lapse of more than 20 years. The respondent's attorney says:

"The statute of limitations commenced to run against Elizabeth E. Tate, the owner of the lands, the 1st day of November, 1897. Elizabeth E. Tate died in September, 1905, and the running of the statute was not arrested by the infancy of E. D. Frady, appellant."

He has failed to take into consideration that E. D. Frady was one of the mortgagors. As she was laboring under this disability of infancy when the defendant entered into possession, neither the statute of limitations, claim of title by adverse possession, nor the presumption of a grant then commenced to run against her. Her disability was also a protection to the adult mortgagors against the statute of limitations and claim of title by adverse possession, but not from the presumption of a grant. *McGee v. Hall,* 26 S. C., 179; 1 S. E., 711. *Ihley v. Padgett,* 27 S. C., 300; 3 S. E., 468. *Garrett v. Weinberg,* 48 S. C., 28; 26 S. E., 3.

Reversed and remanded for a new trial.

MR. JUSTICE WATTS and MR. JUSTICE FRASER concur.

MR. JUSTICE COTHRAN (dissenting): This is an action for the recovery of the possession of two separate tracts of land described in the complaint, and for an accounting of rents and profits and waste. The action not only involves two separate tracts, but they are claimed in different rights. One of the tracts containing 100 acres, is claimed by the plaintiffs as heirs at law of one Amanda Frady, a daughter of Elizabeth E. Tate, who at one time owned the land, and the other, containing 50 acres, is claimed by the two plaintiffs, Mary V. Hughes and Delilah E. Marlin, daughters of Amanda Frady, and granddaughters of Elizabeth E. Tate,

under a deed of conveyance from Elizabeth E. Tate to them.

The facts are as follows:   On September 1, 1894, Elizabeth E. Tate acquired by purchase from the Master of Oconee County a tract of land containing 200 acres.   She was a widow with two married daughters, Amanda Frady and Georgia Evers.   Some time after she acquired the land (exactly when is not stated in the record, but evidently prior to July 20, 1896) she conveyed to her daughter, Georgia Evers, 50 acres of the original 200 acres.   This tract is not involved in this litigation.   On July 20, 1896, Elizabeth E. Tate conveyed 50 acres of the 150 acres remaining after the conveyance of 50 acres to Georgia Evers to two of her granddaughters, Mary V. Hughes and Delilah E. Frady, children of her daughter, Amanda Frady, who was then alive.   Delilah E. Frady was at that time a girl about 15 years old; she subsequently married one Marlin.

On July 24, 1896, four days after the conveyance last referred to, Mary V. Hughes, who owned only an undivided half interest in the 50-acre tract, executed a mortgage thereon to secure a note for $67.68, payable two years after date, to Wilhelmina E. Von Lehe, afterwards Ivester, the defendant.

On October 1, 1896, Elizabeth E. Tate, who was at that time the owner of the 100 acres of the original 200-acre tract, having, as stated, conveyed off the two tracts of 50 acres each, executed a mortgage upon the 100-acre tract to secure a note for $64.00, payable January 1, 1897, to one Alexander, who subsequently assigned the note and mortgage to the defendant, Mrs. Ivester.

On February 24, 1897, Elizabeth E. Tate, the owner of the 100-acre tract, and Mary V. Hughes and Delilah E. Frady (afterwards Marlin), the owners of the 50-acre tract, executed and delivered to Miss Von Lehe (afterwards Ivester, the defendant), a deed conveying to her the two tracts, in all 150 acres.   This deed contains this statement:

"It is understood by and between the parties hereto that this deed of conveyance shall be considered and regarded as a mortgage on said real estate until the 1st day of November, 1897; but if the said Elizabeth E. Tate, Mary V. Hughes, and E. D. (Delilah E.      ?)   Frady shall fail to pay the said Miss W. C. Von Lehe two mortgages which she now holds against said real estate, then this deed of conveyance shall become absolute in fee forever to the said Miss W. C. Von Lehe."

The "case" contains the statement that Elizabeth E. Tate, Mary V. Hughes and Delilah E. Frady remained in possession of the 150-acre tract until November 1, 1897. It is assumed that it was intended to state that Elizabeth E. Tate remained in possession of her tract of 100 acres, and the other two in possession of their tract of 50 acres.

Early in November, 1897, as provided in the deed of February 24, 1897, above referred to, the grantors, being unable to pay the mortgages off surrendered to Mrs. Ivester, both tracts, in satisfaction of the mortgage debts. Mrs. Ivester immediately took possession of the 150 acres, claiming the land as her own under said deed, and has continuously since that time occupied it, paid the taxes, and treated it in every way as her own property. None of the parties, or those claiming under them, have ever made any claim to the property, had or demanded an accounting or paid any part of the mortgage debt, or even the interest.

Elizabeth E. Tate died in 1905; Amanda Frady in 1906. This action was commenced on March 7, 1919, by the plaintiffs, who are the husband and children of Amanda Frady, for the recovery of the possession of the two tracts.

The action really combines two separate and distinct causes of action: (1) For the recovery of the 100-acre tract which belonged to Elizabeth E. Tate, and is in favor of the heirs at law of Amanda Frady, an heir at law of Elizabeth E. Tate, who survived her mother. To this action Georgia Evers, the other daughter of Elizabeth E.

Tate, and her only other heir at law, is a necessary party, though she has not been made such. It is alleged in the complaint that Elizabeth E. Tate had conveyed to Georgia Evers 50 acres of the 200 acres, and that Georgia Evers had accepted that conveyance in full settlement of her interest in the estate of her mother, a fact, however, which in her absence as a party, the Court cannot adjudicate, much less assume to be true. (2) For the recovery of the 50-acre tract, which belonged to Mary V. Hughes and Delilah E. (Frady) Marlin, under the deed of July 20, 1896, from Elizabeth E. Tate, in which only those two of the plaintiffs are interested.

It is accordingly necessary, in the absence of a demurrer for misjoinder of causes of action or for defect of parties, to consider these conglomerated causes of action separately, and attention will be directed first to the one first stated, that affecting the 100-acre tract owned by Elizabeth E. Tate, the recovery of the possession of which is claimed by the heirs at law of Amanda Frady.

The defendant sets up as a bar to the claim of the plaintiffs, laches, waiver, estoppel, abandonment, adverse possession (presumption of a grant), and the statute of limitations. I shall consider only the statute of limitations, which, to my mind, is a complete bar to the plaintiffs' cause of action, but, before doing so, call attention to the form of the action and the impossibility of recovery under it. It is not an action to redeem but one for the recovery of the possession of the land, ejectment; and although it is alleged in the complaint that the mortgages have been paid, there is not a particle of evidence to sustain that allegation. That being so, I do not think that there is a shadow of a doubt but that neither Mrs. Tate nor her heirs can maintain this action.

These facts are undisputed: Mrs. Tate mortgaged the land in 1896; in February, 1897, she conveyed it conditionally to Mrs. Ivester; in November, 1897, she surrendered it

14—S. C. 118

to Mrs. Ivester who went into possession with the assent of Mrs. Tate; no part of the mortgage has been paid.

It is declared in 2 Jones, Mtg. (7th Ed.) § 715:

"Even where a mortgagor cannot be divested of his possession without a foreclosure and sale, if the mortgagee, or any one standing in his place, has, with the assent of the mortgagor, obtained possession, neither the latter nor any one claiming under him can, by an action of ejectment or otherwise, recover possession until the debt is paid"—citing cases from Arizona, California, Illinois, Minnesota, Montana, New Jersey, New York, Oregon, Pennsylvania, Texas, Wisconsin, Kansas, Nebraska, Washington, North Dakota.

And in Section 716:

"If the mortgagee lawfully obtains possession after forfeiture the mortgagor cannot recover possession without satisfying the mortgage. He cannot maintain ejectment for the premises; his remedy is by a bill to redeem"—citing *Romig v. Gillett,* 187 U. S., 111; 23 Sup. Ct., 40; 47 L. Ed., 97. *Bryan v. Brasius,* 162 U. S., 415; 16 Sup. Ct. 803; 40 L. Ed., 1022. *Brobst v. Brock,* 10 Wall, 519; 19 L. Ed., 1002, and cases from Arkansas, Illinois, Minnesota, New Jersey, Texas, Wisconsin, California, New York, Oregon.

, And in Section 673:

"The only remedy of a mortgagor against the mortgagee in possession while that relation continues is a suit in equity to redeem. A mortgagor cannot maintain ejectment against his mortgagee in possession until the debt is paid."

And in Section 674:

"A mortgagor cannot maintain ejectment against the mortgagee in possession so long as there is any question whether the mortgage debt has been paid in full, or there remains any question of account to be settled between the parties."

In 3 Pom. Eq. Jur., § 1190, it is declared:

"There is indeed one situation possible in which he (the mortgagor) must resort to equity for relief. If, through his express consent, or through any other lawful means, the mortgagee has been permitted to obtain possession of the land, the mortgagor's only remedy is the equitable suit for a redemption, in which an account of the rents and profits received can be adjusted, the amount of the debt ascertained, the mortgage extinguished, and the mortgagor restored."

In 19 R. C. L. 330:

"Ejectment will not lie by the mortgagor against a mortgagee in possession, so long as the mortgage subsists."

The case of *Sims v. Steadman,* 62 S. C., 300; 40 S. E.. 677, is clear on the point. In that case the mortgaged premises had been sold under a power of sale in the mortgage which was defective and invalid. The purchaser went into possession under the deed executed in pursuance of the sale. His successor in title was sued by the heirs of the mortgagor for the recovery of the possession of the premises, an action at law as the case at bar is. It was held that the defendant was entitled to be subrogated to the rights of the original mortgagee, and that the heirs, not having paid the mortgage debt, were not entitled to maintain the action. The present Chief Justice prepared the opinion of the Court, and declares:

"Equity gives effect to the deed purporting to convey the legal title in so far as is necessary to protect the rights of those entering into possession of the land under these circumstances, and postpones the plaintiff's right to recover possession until he does equity by paying the amount due on the mortgage"—citing *Cathcart v. Sugenheimer,* . 18 S. C., 123. *Bailey v. Bailey,* 41 S. C., 337; 19 S. E., 669, 728; 44 Am. St. Rep., 713, and cases from the United States Supreme Court.

The analogy, I think, is complete between the case of one going into possession under an invalid deed, invalid

because of a defective exercised power of sale, and the case of one going into possession under a deed purporting to be a conveyance in fee, but in reality only a mortgage.

In the case of *Chambers v. Bookman,* 67 S. C., 432; 46 S. E., 39, the case of *Sims v. Steadman,* 62 S. C., 300; 40 S. E., 677, is cited with approval. The present Chief Justice prepared the opinion in that case also, and declares:

"There is another reason why A. G. Bookman cannot defeat the plaintiff's right in this action. When Mary A. Bookman entered into possession of the land under a deed made in execution of a defective and invalid power of sale contained in the mortgage, believing that she was clothed with the legal title at the time of entry, A. G. Bookman's right to recover possession of the land was postponed until he paid the amount due on the mortgage, and he was remitted to his equitable right of redemption."

It was natural that Mrs. Ivester, taking possession upon surrender of the premises by Mrs. Tate, in pursuance of the terms of the deed should have believed that at that time she was clothed with the legal title, as much so as the purchaser entering under a deed, as in the Chambers v. Bookman case; and she should be entitled to the same legal consideration.

In *Francis v. Francis,* 78 S. C., 178; 58 S. E., 804, it is said:

"A mortgagee in lawful possession is entitled to retain possession against the mortgagor until it is shown under proper pleadings and proof that the debt has been paid"— citing *Cooke v. Cooper,* 18 Or., 142; 22 Pac., 945; 7 L. R. A., 273; 17 Am. St. Rep., 709, and other cases.

In *Kendrick v. Moseley,* 97 S. C., 401; 81 S. E., 652, citing *Sims v. Steadman,* 62 S. C., 300; 40 S. E., 677, the, Court declares:

"When a mortgage creditor comes rightfully in possession of the mortgaged premises, neither the mortgagor nor

one who claims under him may put the creditor out of possession, but may only redeem."

See, also, note to 40 L. R. A. (N. S.) 843.

The plaintiffs, therefore, having failed to show that the mortgage debt had been paid, were not entitled to maintain this action of ejectment, and should have been non-suited upon timely motion. If they had made a motion to amend the action of ejectment could not have been converted into an action to redeem. This is held in the case of *Skinner v. Hodge,* 24 S. C., 165 (quoting from the syllabus):

"An action having been instituted by the heirs of a mortgagor for the recovery of the mortgaged land, the Circuit Judge erred in withdrawing the case from the jury, and directing the complaint to be amended so as to make the case an action to redeem the mortgaged premises, as by such amendment the claim of the plaintiffs was changed, and a new and different cause and kind of action substituted."

The mortgage given by Mrs. Tate in October, 1896, and due January 1, 1897, was past due at the time the deed of February 24, 1897, was executed and delivered, and the principle of *Brownlee v. Martin,* 21 S. C., 392, is not necessarily applicable. But, in view of the absence of proof of any new consideration for the deed, I will assume, with the leading opinion, that the deed did not alter the relations of the parties, and that the relation of mortgagor and mortgagee continued up to and after November 1, 1897, when the land was surrendered to Mrs. Ivester. See *Holden v. Interstate Co.,* 87 Kan., 221; 123 Pac., 733; L. R. A., 1915B, 492, an exceedingly able discussion of the subject. After that date Mrs. Tate, as still a mortgagor, had the right either to pay off the mortgage and sue for the recovery of possession or to bring an action to redeem. She did not pay off the mortgage, and she has not brought an action to redeem.

But, waiving these objections, and treating the action as one to redeem, it is clear to me that if Mrs. Tate were alive she would be barred by the statute of limitations; and, her death not tolling the statute (*Fore v. Berry,* 94 S. C., 71; 78 S. E., 706; Ann. Cas. 1915A, 995,) her heirs are likewise barred.

There is no specific reference to an action to redeem in the statute of limitations in this State, and, under such circumstances, the rule in equity is thus declared in 2 Jones, Mtg. (7th Ed.) § 1144:

"The right of the mortgagor to redeem being an equitable and not a legal right, the statute of limitations does not strictly constitute a bar to a bill to redeem; but equity adopts the statutory period of 20 years (10 years in this State) after forfeiture and possession taken by the mortgagee, beyond which the mortgagor shall not be allowed to redeem if he has paid no interest in the meantime. Such lapse of time affords evidence of a presumption that the mortgagee has abandoned his right." "Where an absolute deed has been given to secure a loan, the grantee's title becomes complete at the close of the statutory period and no action is necessary to divest the right to redeem." "After the mortgagee has remained in possession for 20 years (10 years in this State) without accounting or in any way acknowledging the right of redemption in the mortgagor, the latter cannot redeem."

The cause of action for redemption falls under Section 143 of the Code of Civil Procedure:

"An action for relief not hereinbefore provided for must be commenced within ten years after the cause of action shall have accrued."

This is the construction given by the Courts of New York, from which State our Code comes. 2 Jones, Mtg., § 1147. *Peabody v. Roberts,* 47 Barb. (N. Y.) 91. *Tibbs v. Morris,* 44 Barb. (N. Y.) 138. *Cleveland v. Boerum,*

24 N. Y., 613.  In *Miner v. Beekman,* 50 N. Y., 337, it is said:

"Where one claiming to be the owner in fee of lands subject to the lien of a mortgage, of which land the mortgagee is in possession, institutes an action seeking for an accounting, for liberty to pay the amount ascertained to be due upon the mortgage, and upon payment to be let into possession; such action is not embraced within Section 78 but comes within the provisions of Section 97, which limits the time for the commencement of actions for relief, not before provided for in the preceding sections, to ten years."

In *Hubbell v. Sibley,* 50 N. Y., 468, it is held:

"An action by a mortgagor against a mortgagee in possession for an accounting, and for the recovery of possession of the mortgaged premises upon payment of what shall be found due, seeks a purely equitable remedy, and comes within the provision of Section 97 of the Code limiting the time for the commencement of actions not otherwise specified to ten years. The cause of action accrues at the time of entry of the mortgagee under claim of title, and the statute then begins."

To a similar statute in Wisconsin the same constructon is given. The Court, in *Knowlton v. Walker,* 13 Wis., 264, says:

"There is no doubt in our minds that in such case the statutory period dates only from the time the mortgagee takes actual, open, and notorious possession of the premises. This is too well settled to admit of discussion. If, after he has done so, the mortgagor permits him thus to continue in possession for the period prescribed, without procceding to redeem, or require an account of the rents, issues, and profits, the bar is complete, but not till then."

In *McNair v. Lot,* 34 Mo., 285; 84 Am. Dec., 78, it is held:

"Actual possession for 20 years by mortgagee, or adverse possession by a stranger to the mortgage, without ac-

count or acknowledgment of any subsisting .mortgage. bars the equity of redemption of the mortgagor by operation of the statute of limitations."

In a suit to redeem a mortgage, *Demarest. v. Wynkoop,* 3 Johns. Ch. (N. Y.) 135; 8 Am. Dec., 467, Chancellor Kent said:

"It is a well-settled rule that twenty years' possession by the mortgagee, without account or acknowledgment of any subsisting mortgage is a bar to a redemption, unless the mortgagor can bring himself within the proviso in the statute of limitations."

See, also, Kent, 188; *Elmendorf v. Taylor,* 10 Wheat, 152; 6 L. Ed. 289; 40 L. R. A. (N. S.) 847, note.

In Angell, Lim. (4th Ed.) § 456, it is said:

"The right of redemption in equity, like the right of entry at law, may be effectually barred by a possession of twenty years. And it is a well-settled rule that, if the mortgagee is in possession for twenty years, the mortgagor cannot redeem, unless he can bring himself within the proviso hereafter to be ·considered, which saves the rights of infants," etc.

In 2 Jones, Mtg. (7th Ed.) § 1144, it is declared:

"The possession of the mortgagee must be unequivocally adverse to the mortgagor or person entitled to the equity of redemption. The fact that he entered with the consent of the owner makes his possession none the less adverse, unless in return he assumed some obligation to the owner."

The question is not one of adverse possession allowing the application of the principle of a permissive entry, but one of the statutes of limitations; the fixing of a time within which the action to redeem must be brought dating from the time of the mortgagee's entry.

It is suggested that the infancy of one of the plaintiffs, Delilah E. Marlin, at the time of the execution of the deed of February 24, 1897, has saved the plaintiffs as a body from the bar of the statute, under the principles announced

in the case of *Garrett v. Weinberg,* 48 S. C., 28; 26 S. E.,
3. This might be true but for the fact that Delilah E.
Marlin, though an infant at said time, is herself now barred
by the statute. It appears that she was 17 years of age at
the time of the execution of the deed, February 24, 1897;
she was practically 18 at the time Mrs. Ivester went into
possession of the land, the date of the accrual of her right
of action to redeem, November 18, 1907. If she had then
been of age her right of action would have expired in No-
vember, 1907; but, being only 18 years of age, the question
is, When was her right of action barred? This question
must be answered by a construction of Section 148 of the
Code of Civil Procedure. That section provides that, if
a person entitled to bring an action enumerated in Chapter
III (other than for the recovery of real estate) within
which an action to redeem falls, be, at the time the cause
of action accrued an infant, the time of such disability
shall not be deemed a part of the time limited for the com-
mencement of the action; provided that such time shall not
be extended longer than one year after the majority of
such person shall have been reached. The section refers
to other disabilities as well as to infancy, and contains cer-
tain provisions applicable to them, but not to infancy; and
is admittedly confusing in its terms. It has, however,
received judicial construction in the case of *Fricks v. Lewis,*
26 S. C., 237; 1 S. E., 884, where all confusion is dissi-
pated. The result of that decision is that, if an infant at-
tained majority within the period of limitation, and more
than one year has elapsed between the date of majority
and the termination of the period, the infant is entitled to
no additional time, and the action is barred at the expiration
of the original period. This is illustrated in the Fricks case,
where the limitation was six years, thus:

"But if his cause of action accrued when he was 16
years of age, then he would be limited to the six years, be-
cause the statute does not provide for any extension of the

time allowed after the lapse of one year from the time his disability ceases."

Consequently, Delilah E. Marlin having attained her majority in 1901, six years before the 10-year limitation expired in 1907, which was more than one year after she attained her majority, was barred at the expiration of the 10-year period in November, 1907, twelve years before that action was begun.

In reference to the cause of action in favor of Mary V. Hughes and Delilah E. Marlin to redeem the tract of 50 acres conveyed to them by Mrs. Tate: The foregoing observations are applicable to this cause of action as well. Their cause of action accrued in November, 1897; as to Mary V. Hughes, it was barred in 1907, and for the reasons stated above it was barred also to Delilah E. Marlin at the same time.

The leading opinion proceeds upon the following theories: (1) That the mortgagee in possession even by the express verbal agreement of the mortgagor that he shall take the land for the debt, is a trustee for the mortgagor, and as such cannot claim the benefit of adverse possession or the statute of limitations until he shall have thrown off the trust by relinquishing possession or giving notice to 'the mortgagor of his adverse holding; (2) that the entry of the mortgagee under such verbal agreement is by permission of the mortgagor, and that the mortgagee cannot make claim to either of such defenses until he shall have complied with one or the other of such conditions.

As to the first theory: In view of the requirement that, before the mortgagor shall be held to have released what is inaccurately termed his equity of redemption, it must appear that it was released upon a new and valid consideration and with the formalities of a deed, I agree that, as long as the mortgagor's equity of redemption continues as a living right, the mortgagee is such a trustee. But when it is dead by reason of the bar of the statute of limitations.

when that which gives life to the relation of trustee and
cestui que trust is annihilated, the relation is necessarily
ended.

If the mortgagee must surrender possession of the
property to the mortgagor before his right to adverse pos-
session or the statute of limitations shall begin to be cur-
rent, I do not see how it is possible for him ever to get the
benefit of either claim, unless he reenters and ousts the
mortgagor with strong arm.    Nor do I see the necessity of
the mortgagee notifying the mortgagor that he is holding
adversely to his right, when the mortgagee has entered
under the very condition that assumes that fact, by agree-
ment with the mortgagor.    The law does not require a
vain thing, and what is the use of the mortgagee notifying
the mortgagor that he holds adversely to him when the
mortgagor already not only knows that, but has agreed to
it, and notifying the mortgagor of the very fact that it is
suggested the mortgagee should notify him of?

As to the second theory:   It is unquestionably true that
one who enters upon another's land by permission or agree-
ment of the owner, under circumstances of subordination
to the owner's title, cannot afterwards claim in opposition
to this title until he shall have given fair notice to the owner
by relinquishing his possession under that subordinate title,
and entering under an antagonistic claim, or by actual no-
tice that his possession no longer is under such subordinate
title, but upon some other ground antagonistic to the owner's
title.    But I cannot conceive how this principle is applicable
to the facts of this case.    The mortgagee did not enter un-
der a title subordinate to the mortgagor's title, and while
the entry was made by permission of the mortgagor, it
was expressly, by agreement antagonistic to the mortgagor's
title.

The authorities cited by the learned Chief Justice from
the decisions of this Court are, without exception, cases
where the entry was made by permission of the owner and

the claim of the entrant subordinate to his title, as I will show.

*Wilson v. Weathersby,* 1 Nott & McC., 374:    There the defendant entered upon the plaintiff's land under an agreement with the plaintiff, which recognized the plaintiff's title; and it was properly held that, as long as he continued in possession under the plaintiff, he could not dispute the plaintiff's title, but that, if he claims under an antagonistic title, he must surrender possession and bring his action to try title.    In other words, so long as he is in possession under a claim  subordinate  to  the  plaintiff's title, he is estopped from denying the plaintiff's title, a proposition that I entirely approve.

An illustration of this ˙ is, as  stated  in  *Whitmire  v. Wright,* 22 S. C., 453; 33 Am. Rep., 725, (citing the above case) :

"Hence if one acquires possession under a lease [subordinate, of course, to the owner's title] he cannot dispute the title of his lessor until he surrenders the possession, * * * or perhaps until he disclaims holding under his lessor's title, and retains the adverse possession for a period long enough. after such disclaimer to give him a title under the statute of limitations."

It is inconceivable that a mortgagee who goes into possession under an agreement with the mortgagor that the land should be surrendered to him in satisfaction of the mortgage enters in subordination to the owner's title.    He not only enters in antagonism to that title, but by express agreement of the owner to that effect.

*Trustees v. Meetze,* 4 Rich., 50:    This was a case of tenancy, a lease for 99 years; clearly an entry in subordination to the owner's title; and it was correctly held that such permissive entry under the owner's title could not set in motion the currency of the statue or adverse possession without notice of an antagonistic claim to the landlord.

*Milhouse v. Patrick,* 6 Rich. 350. This was the case of a subtenant of the owner entering as such; he afterwards acquired an antagonistic title to that of his landlord, but held over under his sublease; it was held correctly that, so long as he held in subordination to his landlord's title, he was estopped from disputing it, but must surrender possession under his subordinate claim, and then sue upon his acquired title. In *Darby v. Anderson,* 1 N. & McC., 370, it was held:

"A tenant is not at liberty to controvert the title under which he enters."

And in *Whaley v. Whaley,* 1 Speers, 233; 40 Am. Dec., 594:

"The tenant cannot dispute the title of his landlord, either by setting up title in himself or another."

All of them are necessarily cases of entry in subordination to the owner's title.

The principle is applicable to the case of a vendee going into possession under a contract of purchase, clearly in subordination to the vendor's title. In *Blackwell v. Ryan,* 21 S. C., 123, it is said:

"It is a familiar doctrine that one who goes into possession of land under a contract to purchase it, and has not paid the whole of the purchase money, cannot acquire title against the vendor by the statute of limitations."

*Sims v. Steadman,* 62 S. C., 300; 40 S. E., 677: This case is cited in the leading opinion to sustain the proposition that a mortgagee in possession is a trustee for the mortgagor. I do not dispute this proposition. The case, however, is rather authority for the position that I have assumed heretofore, namely, that an action for the recovery of real estate, as the case at bar is, cannot be maintained by the heirs of a mortgagor against the mortgagee in possession, without paying the mortgage debt. In that case the defendant in possession claimed title from one who went into possession under a deed executed under a defective

and invalid power of sale in a mortgage. The defendant was sued by the heirs of the mortgagor for possession of the premises. The Court held that the defendant was entitled to be subrogated to the rights of the mortgagee, that he was not a trespasser, and that the heirs could not maintain their action without paying the mortgage debts; except the position I have taken in an earlier part of this opinion. The Court says:

"Equity gives effect to the deed purporting to convey the legal title in so far as is necessary to protect the rights of those entering into possession of the land under these circumstances, and postpones the plaintiff's right to recover possession, until he does equity by paying the amount due on the mortgage * * * and remits him to his equitable right of redemption."

The proposition to sustain which the case is cited is not discussed at all therein, though, as stated, I do not dispute it as long as the mortgagor's right of redemption retains its vitality.

*McCutchen v. McCutchen,* 77 S. C., 129; 57 S. E., 678; 12 L. R. A. (N. S.) 1140: This was the case of a son going into possession under an alleged contract with his father—clearly a case of possession under a claim subordinate to his father's title—and it was correctly held that he could not claim adverse possession or the statute of limitation so long as that subordinate claim continued. It is significant that in that case the following occurs:

"Nor does it apply where there has been an adverse holding for a length of time sufficient to raise the presumption of a grant."

*Pinckney v. Knowles,* 112 S. C., 7; 99 S. E., 354: This was a clear case of landlord and tenant, and states the law correctly that, as long as that relation continues (the tenant holding, of course, in subordination to the landlord's title), he (the tenant) is estopped from disputing that title. The Court says:

"When Knowles went in as a tenant of Huguenin and desired to set up claim to land, he was bound bona fide to give up possession and recover on the strength of his own title."

It appears to me, therefore, that without exception the cases cited in the leading opinion are cases of entry by permission of the owner under a claim subordinate to his title, and that no authority is cited tending to establish the proposition that an entry by a mortgagee under an agreement with the mortgagor to take and hold the land as his own in satisfaction of the debt is an entry by permission of the mortgagor, and in subordination to his title; the contrary plainly appears to my mind, and presents a condition immediately giving currency to the statute.

In *Hughes v. Edwards,* 9 Wheat, 489; 6 L. Ed., 142, it is said:

"In the case of a mortgagor coming to redeem, that Court has, by analogy to the statute of limitations, which takes away the right of entry of the plaintiff, after 20 years' adverse possession, fixed upon that as the period after forfeiture and possession taken by the mortgagee, no interest having been paid in the meantime, and no circumstances to account for the neglect appearing, beyond which a right of redemption shall not be favored."

See, also 3 Story Eq. Jur. (14th Ed.) § 1375.

"When the mortgagee enters into possession of the mortgaged premises for condition broken, the statute begins to run against the mortgagor from the time of such entry." Wood on Lim. (4th Ed.) § 224.

"Where a mortgagee is in possession of the premises for the full statutory period after condition broken, the mortgagor's right of redemption is forever barred, unless within that period the mortgagee has accepted from him some portion of the principal or interest of the mortgage debt, or in some other legally effectual way acknowledged the right of the mortgagor to redeem." Id. § 235.

"A mortgagor's right of action to quiet title, recover possession, and redeem from the lien of the mortgage accrues when the mortgagee takes possession with color of title to the fee and claim of ownership, and the ten-year limitation will then begin to run." Id. § 272b (5).

In *Lyles v. Lyles,* Harp. Eq., 288, a father caused portions of his land to be surveyed and marked, and gave them to his sons, putting them respectively in possession of the several tracts. They made improvements and continued in possession long enough for the statute of limitations to run. Their titles were held to be valid. The Chancellor remarked:

"Such a possession would give them perfect titles under the act of Limitations, and should have a peculiar claim to its protection, as it has been obtained with the express consent of their father, and not by a mere constructive acquiescence."

In this case the entry was made by permission of the owner but as the claim was not in subordination to the owner's title, but expressly antagonistic thereto, the currency of the statue began.

Wood on Lim. (4h Ed.) § 260, expresses the same view:

"An entry under a parol gift of certain lands, the extent of which is definitely fixed, is adverse to the donor and ripens into a title after the lapse of the requisite statutory period."

It would seem a fortiori that an entry under an agreement supported by a valuable consideration (the satisfaction of the mortgage debt) would likewise be adverse to the former owner.

In the quotations from Wood on Limitations, above set forth, cases sustaining the text are cited from the Courts of the following States, all of which I have examined and verified: Arkansas, Alabama, California, Connecticut, Georgia, Illinois, Iowa, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New

York, North Carolina, Tennessee, Washington, Wisconsin. The precise question arose in Alabama, in the case of *Richter v. Noll,* 128 Ala., 198; 30 South., 740, where it was held (quoting from syllabus):

"Where, under an absolute deed intended only as a mortgage, the grantee goes into possession, and holds the same continuously under claim of ownership for a period of ten years without accounting for the rents and profits or otherwise recognizing the title of the grantor, a bill in equity to establish such deed as a mortgage, is barred by the statute of limitations of 10 years."

In *Turpie v. Lowe,* 158 Ind., 314; 62 N. E., 484; 92 Am. St. Rep., 310; *Nash v. Land Co.,* 15 N. D., 566; 108 N. W., 792, and *Houts v. Hoyne,* 14 S. D., 176; 84 N. W., 773, it is held that the action for redemption falls under the provisions of what is our Section 143 of the Code of Civil Procedure.   The effect of the leading opinion is to charge the defendant with rent for 22 years, $1,100; credit her with the two mortgages and interest, about $300.00. Debit $800.00.   The defendant therefore loses her land, and is required to pay $800.00; a result which, under the circumstances, in my opinion, should not be tolerated.